Good morning, Your Honors. May it please the Court, I'm John Ward, appearing on behalf of Mr. Rodgers. I have a little cold and I'm going to do my best to speak up loudly and slowly. The Court ordered us the other day to take a look at the John Charles case and to comment on how, if at all, it affects the matter before us. And my position is that it does not affect this case. And the reason is because, as John Charles itself says, if I can find it, yes. Robinson, which is Ignacio v. Robinson, is the one that holds that you're entitled to withdraw a Feretta waiver for sentencing hearing. Robinson expressly limited its holding to a situation where a Feretta defendant seeks to reassert a right to counsel for a separate subsequent proceeding, it at 1059, holding that it is clearly established Federal law that a defendant who has waived his right to counsel may nevertheless reassert that right for the purposes of a sentencing proceeding. Are you reading from John Charles? I am. What page? Oh, I'm sorry. I'm reading from page 1252. Thank you. You're welcome. Because Robinson did not purport to address the question whether a self-represented defendant has a right to reappointment of counsel once trial proceedings have begun, rather than during a subsequent proceeding, see it at 258, there is a substantial practical distinction between delay on the eve of trial and delay at the time of post-trial hearing. I'm sorry to interrupt you, but in short verse are you saying that John Charles doesn't apply because in that case the request for reappointment of counsel happened during trial, not at the post-trial stage? Right. And the Federal courts, I think, would have said the same thing. As the State courts said, you know, after the jury has been impaneled, generally speaking, you don't get the chance to change your mind. However, there is a big distinction, as Mennefield pointed out and as Ignacio adopted, and as I point out in my reply brief, I think it was the Fifth Circuit says all of the Federal courts are in agreement. And that's the point.  I'm saying that a post-trial pre-appeal proceeding is a critical stage at which one can withdraw one's Ferretta waiver. So that's about what I have to say about John Charles. If we agree with you that this is a critical stage and, therefore, his rights were violated, what happens? Okay. Before I forget, Your Honor, if time permits and if the Court permits, I would also like to discuss one of the uncertified issues, what I regard as serious apprendi error that occurred in this case. Okay. And so. Okay. Well, I'll try to hang on to that. Okay. You can answer the question. Yes. Assuming you persuade us that this was a critical stage at which he was entitled to have a lawyer, what happens? Well, then I guess what Mennefield says happens is it goes back to the State court to determine whether or not a new trial and a new sentencing Well, let's hold sentencing apart. Okay. A new trial motion can be meaningfully had. And if it can, they have it. And if it can't, he gets a new trial. That's what Mennefield says. That would be the ruling. Okay. Well, isn't what happens if you succeed is you go back. He gets an appointment of counsel. They draft a motion for a new trial. If the trial judge grants it, he gets a new trial. If not, he's back where he is. Well, Mennefield kind of qualifies that. They say if it's possible, which I imagine quite candidly it probably would be because, you know, you're looking at the record. Who knows? One of the things that Mr. Rogers claimed is, you know, there was no his wife, who was the alleged victim in this case, never showed up. And he claimed that he could bring her in. The trial judge in California, as you know, is the 13th juror. He could have decided that it was against the weight of the evidence, you know. I mean, there was no real evidence that there was a loaded gun here. The State Court of Appeal inferred that there was a loaded gun. There was some problems with this case. And a good lawyer with a new trial motion, I'm not saying it's going to be, you know, it's always an uphill battle. It's not a frivolous motion. It's not a frivolous motion. Right. In the briefing in this case, both sides suggested there was a split among the circuit courts on the issue of whether a post-verdict motion for a new trial was clearly established by the law. Right. And I think I deal with that in my reply brief. I don't want to read at you for page after page. Tell me if you believe the circuits are split or not. No, they're not. And the most recent case is McAfee v. Thaler, which I cite at page 2 of my reply brief, a Fifth Circuit case, which says every Federal circuit court to address the question of whether the post-trial pre-appeal time period for making a motion for a new trial is a critical stage has concluded that it is. And if it is a critical stage, then tell me how we reach the conclusion that a pretrial motion for a new trial is an extension or a general application of Supreme Court precedent. Okay. Because we have to show that, don't you? Yeah, I do. And this is where John Charles takes a somewhat narrower view of how that determination is made. In Ignacio, and also more to the point perhaps in Panetti, which I cite in my opening brief, a Supreme Court case, the Court talks about general rules that, even if they're broad, can be unreasonably applied. And the general rule that Ignacio and other courts have relied on is the centrality of counsel in trial proceedings in our system of justice. That's Gideon. That's Cronic. I think there's a third case which I can't recall at the moment. So that's the general principle. In other words, that a lawyer is so important that we just don't assume that a Feretta waiver is cast in stone. But the Supreme Court has never commented on a requirement for a lawyer at the stage we're talking about in this case. No. But the case is where the lower courts get, if I may use the vernacular, dinged, is where the Supreme Court has addressed a similar question and not the question of point. In John Charles, they cite Musseldine and Van Patten, in which the Supreme Court got very exercised because I get the two cases mixed up. But in one case, whether or not reversal is required when the lawyer appears by telephone rather than in person, and we've never said that he had to appear in person. Okay. In other words, and in the other case, they said Holbrook v. Flynn, which requires reversal when there's disruptive behavior in the courtroom, doesn't apply when the disruption occurs from private citizens. We never held that. That's different from a much more – in other words, they're cutting the cheese fairly fine in those cases, where you have a much more general and broad principle of the right to counsel. There is – I can't think of anything that's more basic, except perhaps a jury trial. Then, as John Charles points out, the room for disagreement is broader, but also the room to find, on the basis of the convergence of everybody, that a Supreme Court precedent exists is open to the lower courts. So, essentially, I think it's a judgment call. Assume that the – there is a right to a reappointment of counsel in the subsequent proceeding. Yes. After you have asserted your forerunner rights and that there is a Supreme Court decision that would allow a court to say that's clearly established, what was the State appellate court's reason? Well, actually, if I could just – I'll answer that question, but if I could step back even further to the trial court and to Mennefield, okay? What Mennefield says is, whatever else you can do, you can't deny counsel for a punitive reason. And in this case, the trial judge said, you made your bet, Mr. Rogers. Now lie in it. The court of appeal essentially embraced that decision. Mr. Rogers was obviously a difficult – Didn't the court of appeal say that you didn't offer any reason as to why you needed a counsel now after initially deciding you didn't? Well, the reason that – yes. And Mennefield says the opposite, that there's a presumption that a lawyer in a new trial or in a sentencing situation could be useful and should be appointed. In other words, that the burden – the difference is, in the State court, the burden is placed on the defendant to come up with some reasons. And actually, he did. I mean, despite what the court of appeal said, he said he had 21 reasons why he could have a new trial and so forth and so on. But he was – you know, what's clear is – Well, that's different. 21 reasons why he could have a trial may be a good reason why he doesn't need a lawyer. Well, but – He's already got 21 reasons. I don't think so, really. Well, no, but I'm not asking whether he had a good reason to win on his motion. I'm asking whether the State court didn't say that he didn't show any reason to request a lawyer at this stage of the proceedings. And I don't say what the consequences of that are. I'm just asking what the State appellate court said. They did say that he didn't – that he didn't say any reasons. You're right, Judge. And then the next question is, is that a reasonable application or an unreasonable application of whatever the Supreme Court law is? And one of those questions might be, in that connection, are we bound by Manifield? Notwithstanding the subsequent Supreme Court cases. Well, I think so. You're not bound by Manifield. You're certainly bound by Ignacio, which has to do with the analogous situation of a post-trial sentencing proceeding. I mean, I think the point is that you don't have to explain why you need a lawyer. You need a lawyer. We get lawyers. That's how we – that's how we – Well, that's saying that that's an unreasonable application. Yes. Of whatever the Supreme Court rule is. Right. And that's a question the Supreme Court doesn't seem to find almost anything to be an unreasonable application. Well, they occasionally do. And I'm earnestly hoping that this will be – if it ever gets that far, this will be one of those situations. And the reason that I have some confidence is because a lawyer is so central to our system of justice. And when you have a situation that's not mid-trial, not disruptive, not any of the other things, then the guy should have a lawyer. I mean, you know, Gideon, Cronic, that's the argument. And is it unreasonable to say no for – and in addition, in addition, I think the other thing that can't be ignored is the real reason the judge never made any finding of bad faith – the trial judge, that is – never made any finding of bad faith in this case, never made any – he just told him just about out of the gate, sir, you made your bed, lie in it. Well, let's have a little sympathy for the trial judge here. Every trial judge's worst nightmare is a – I know. Let me finish – is a pro se criminal defendant. Those are difficult trials. And here you had a pro se defendant who insisted on going without a lawyer, went through the trial without a lawyer, and now the outcome is not what he expected or wanted, and the first words almost out of his mouth are, I want a lawyer. And so the trial judge is saying, wait a minute. We've already been through this. No, I'm not going to do it now. I mean, come on. It doesn't mean you get a lawyer at every minute of every stage of the case. I'm perhaps overstating the case when I'm villainizing the trial judge. I shouldn't do that. But the point is that Mennefield says – and you get later when the manipulation is over, when you're at the new trial stage. Because of the importance of the new trial motion in California jurisprudence, you should have a lawyer, even if you're a pain in the neck. And if I may add, pro se appellants are really difficult for us to write about, too. I just – I have a minute. I want to talk a little bit about the Apprendi issue. It was decided de novo by the magistrate judge because the State court applied the wrong standard. The magistrate said, well, you know, there was error, but it was harmless because this guy had a lot of convictions. And if you have a lot of convictions under Almondarez-Torres, you can impose the upper term under any circumstances. And that's really not quite the case. The judge did not rely on – there were two – let me be real quick. There were two upper terms, one for the assault and the 10-year, the bad one, for the gun use. For the gun use, he said poor performance on parole and – the other one has just slipped my mind, but it's not the multiple convictions. Those are both things that have to be evaluated by a jury. They weren't. The judge did not mention the multiple numerous and more serious convictions. And as I submitted in my 28-J letter, appellate courts in California and here do not make up reasons. They evaluate the reasons that the trial court gives. And the trial court never relied on numerous and more serious convictions in imposing the 10-year sentence, which would be – actually, relief on that would be the most beneficial of all to Mr. Rogers because he'd be out. I think I'm just about out of time. Thank you. We'll give you two minutes for rebuttal. Thank you. Good morning, Your Honor. May it please the Court. I'm Kevin Vienna. I'm a California Deputy Attorney General here for Respondent Appellee. I guess I'd begin by, well, thanking the Court for doing our job for us and raising John Charles. That should have been our 28-J letter, and it's our – I apologize that we had not called that and notified the Court. We believe, however, that the Court has identified the critical issue in the certified – for the certified matter in this case, and that is, is there United States Supreme Court authority that was clearly violated – clear authority that was violated or unreasonably applied by the California courts? John Charles says quite clearly that there simply is no standard for reassignment of counsel after Faretta – after Faretta rights have been exercised. And we're at a post-trial stage. During the trial. At least during the trial. Well, during the trial. And we're at a post-trial stage. The – but the difficulty – Yes? Certainly. We're definitely post-trial. But the – I mean, the – So our case is more like Robinson. Which doesn't help either. Because? Because in an AEDPA case, you have to begin with a United States Supreme Court precedent that was unreasonably applied. And as John Charles makes clear, the precedent that applies in these circumstances are Gideon and Faretta. And neither – What about Williams? What about Williams? I mean, for unreasonable application. I – but it has to be unreasonable application of some precedent. So you have to begin with that precedent. What about the uniformity in all the circuits who've addressed the right to counsel at a post-trial stage? Is that not a critical stage that they've agreed in Titles I to write to counsel? All of the circuits seem to have agreed. I think California agrees. But the United States Supreme Court has never addressed the question. And that's the difficulty. Wright v. Van Patten says if the Supreme Court hasn't squarely addressed the issue, and the issue is broad, then the state courts have a lot of leeway in deciding how the rules should be applied. And while it may well be that the United States Supreme Court, when faced with that issue, would resolve it and establish a clear rule, they haven't done that. And under the AEDPA, those types of rules are not supposed to be – This is a tricky question. And I'm sympathetic to both sides in trying to argue this one as to what constitutes controlling precedent by the United States Supreme Court, because it is a question of stated at what level of generality. I mean, if it has to be – the defendant's name is spelled an odd form of Jones, level of specificity, we're never going to have a Supreme Court case that's on point. To the circuits that have addressed the question, the Supreme Court law has been sufficiently clear that all circuits have come out exactly the same way, which suggests to me that stated at the level of generality the Supreme Court has stated, that's a pretty clear rule coming out of the United States Supreme Court, because no circuit court has had trouble understanding the rule. I don't dispute that, Your Honor. I mean, that's why it's a hard question to know what AEDPA means. And it's one with which all courts, all Federal courts have dealt since the AEDPA was adopted. Right. And I'm not going to pretend to solve that problem this morning. But there are sort of two aspects to this. One was, did he have a right to counsel? Without question, he had a right to counsel through the sentencing proceeding, without regard to the specific issue of a new trial motion. But did he have a right to reappointment of counsel when he said, I want a specific lawyer to help me with a new trial motion? And that is a good deal more complex. Now, wait a minute. Did he say, I want a specific lawyer, or did he say, I want a lawyer? No. He said twice, I want a lawyer by name who had represented me before. And the refusal was not that you don't get that lawyer. The refusal was you don't get any lawyer. Well, yes. So it doesn't make any difference whether he asked for someone by name. The denial about it, well. Because that was not the reason why his request was denied. It might make a difference. I mean, if we're going to be examining the level of generality and the reasonableness of the State court's resolution of a claim when it's raised, then that does matter. Because, as you indicated, the Feretta issue is a quagmire for trial judges. Not just difficult, but dangerous when you have a litigant like Mr. Rogers who shifts back and forth. It is a. And the trial judge was clearly frustrated here. And when he requested a lawyer at that stage, by name or otherwise, he was denied. He was denied. And he was denied under the California Supreme Court's interpretation of whether he's entitled to a lawyer or not at that point. And the California Supreme Court has looked at it without much guidance from the United States Supreme Court and said when you want a new lawyer, after you have validly exercised your right to self-representation, you can have one. You can't have one if your reason is bad. And I think it is realistic to interpret what the trial judge's position is. This was a bad reason. Mr. Rogers. Kennedy. What was the reason? Delay. Mr. Rogers had been delaying disruptive. It had taken two years to get this case to trial. But then in addition, the California Supreme Court has said if you want one after you have exercised your right to Feretta, you're supposed to have a reason. Did the California appellate courts say that the reason was delay? They certainly didn't say that expressly and explicitly. But when they begin their discussion of the circumstances for the trial court's denial of his request and they preface that with the history of delay in this case, just as the district court concluded, that delay factored into their determination. How do you know that? Do I know? How do you know that? I can't do I know. I would simply say that it is a reasonable inference from the record that was before the courts. It doesn't seem likely that the delay. He was in jail or prison, I assume. He was in jail. I agree with that, Your Honor. And what benefit does he get out of delay? What benefit? Well. I can see delay in delaying a trial, delaying a conviction. What's the benefit? What reason would he have to delay the new trial? Maybe he just likes life better in a California jail. Not if he'd been in any of the jails around here. This is, I think, a Riverside conviction. I haven't visited the jail, though. But he also, while the trial was going on and he was representing himself, he has additional, what shall I say, freedoms when he's in jail that are not going to be available to him when he's in prison, like telephone privileges and access to a library, freedom of movement. So I don't know that. We don't have any of that. But you asked me to. And I don't think that's what the reason the court gave for denying him a lawyer. I think that was part of it. But what they said more clearly was that he had never expressed a reason. In fact, that he had said, well, I'd like to have, I think the gentleman's name was Beltram. That's close to it. I'd like to have him help me prepare my new trial motion. But if I can't have him, if I can't have him, then please give me the transcripts. And then later on, the trial court said again, would you like to explain to me why you wanted an opportunity to argue that? And he provided no argument. He declined the opportunity for argument. So there was at least a possible influence of the bad reason, that is delay and disruption to the orderly administration of justice, and the absence of any good reason that he had not explained. Now, I don't know California criminal procedure on this point. But I assume that there's a time limit that controls when a new trial motion may be made. Well, what there is, I think the time limit that's going to apply is that the statute provides for about a month from pronouncement of conviction until sentencing occurs. And so if you're going to make the new trial motion, you're going to have to make it before sentencing. So I think it's realistic to say that there is a time limit of sorts. So we're not likely to get a very long delay. Well, there is the opportunity to ask for continuances, and indeed Mr. Rogers did ask for a continuance when he got right to the moment of sentencing. At that point, he asked for another two months of continuance, and the trial court denied it. I'm trying to get a sense as to how long a continuance would have been likely. If the judge had appointed a lawyer, I assume there would have been some continuance so the lawyer could have familiarized himself with the trial record and so on. Yeah, sure. I can't imagine it would have been less than a month. But the ‑‑ I think ‑‑ I want to challenge you a bit on whether the defendant was given an opportunity to give a reason and the transcript reflects when he requested a new lawyer. The court said, we aren't doing anything like that right now, Mr. Rogers. If you have some request that you want to make a motion for something, I expect that you will do that, you will serve it, you will file it, and we'll take it up at that time. Rogers, Your Honor, also, if you're going to deny counsel, the court interrupts him. You are not going to get counsel, Mr. Rogers. You made this election to represent yourself. Everybody tried to talk you out of it at the time. You insisted you wanted to do it. You're doing it. We aren't going to substitute an attorney at this time. He pretty much shut the door on him, didn't he? Well, it certainly wasn't encouraging. I have to agree with that. And there is, without question, some reflection of frustration there. But it wasn't resolved and it wasn't final. The trial judge said, the first reference to I would like this named counsel to assist me in a new trial motion was immediately after judgment, I think on June 27th. And the trial judge said, we're not resolving that now. I'm not giving you counsel, at least arguably. You're not getting a new counsel today. But isn't the show over at that point? Following up on my colleagues, I mean, delay I understand during trial. But once that judgment has come in and the guilty verdict has been rendered, delay is much less a factor. I mean, there's going to be a sentencing. The pre-sentence report will be prepared. Yes. And so California says that at that point when a defendant asks, well, if a defendant asks to be relieved from his election of self-representation, and I don't think that's clear at all, that's what happened. He asked for a specific attorney to help with a single task. He didn't ask to be relieved of the or to relinquish his right of self-representation at that point. Isn't your best argument in this case that his right to counsel at this stage, at the new trial motion, is an extension of Supreme Court precedent, that there's nothing on point? And that really is the hinge, if you had to pick one, that you're relying on. Well, that's what we've been arguing, I think, since we were in the district court. And I think John Charles solidifies our argument by saying that, quite simply, the Supreme Court has not squarely addressed the rules that apply after the election of the right to self-representation. And until that happens, state courts have broad leeway to fashion their own rules. And so long as those rules are reasonable, that is, so long as they could be achieved by a fair-minded jurist, or a fair-minded jurist might argue about the best way that that should be resolved. But what is the state rule that you would say is state fashion in this case? Well, I think the state court applied the state rule. And the state rule is that asking for reappointment of counsel after Ferrara has been exercised is a matter committed to the discretion of the trial court. And it can be denied if the reasons are bad. And it also can be denied if there's no indication of a good reason for the request. I think those work together. But there's got to be an indication of a good reason for the request. The state has an application of whatever the Supreme Court rule is. The application by the state is if you ask for counsel at a post-trial stage, the state rule is you have to have a reason for asking for trial. Examining whether the trial judge abused his discretion or her discretion in denying that examines a number of factors, including the history of the case, whether it looks like the request is made for purposes of delay, and whether the defendant has indicated some reason. And as the court of appeals said here, not only was there no reason, but indeed it appeared that there was no reason because he, Mr. Rogers, appeared to be capable of filing his new trial motion and did. And his only, and he alternatively said, look, if you're not going to give me a new lawyer for this motion, please give me instead the transcript. Now, there's an appendi argument that's not certified. And as you're perfectly entitled to do, you didn't respond to it in your brief. Yes, Your Honor. Can you give me at least a hint as to what your answer might be if we were to require you to file a brief answering that question? Yes, Your Honor. Our answer is that the determination by the district court was exactly right. That is, if there was appendi error, then that error was harmless beyond a reasonable doubt because any juror, any jury would have found to be true one of the rule, or one of the aggravating factors that the trial court cited. That is, that Mr. Rogers employed violence and appeared to be a danger to the community. That that was without question would have been resolved. Okay. Your answer would be we agree with the magistrate judge. Well, the magistrate judge was right. But that portion of the magistrate judge's decision has been absent, it seems to me, from all of the briefing done by the magistrate judge. Okay. Yeah, well, and we obviously are not going to rule against you on that without asking you to file a brief. Okay. Go back to the other issue. Would it be unfair to say that the California Court of Appeals' reason was, and I quote, that he did not include any facts or reasons to support his motion and holding because the trial court was not given any reason to grant the defendant's motion, we cannot find that the court abused its discretion in declining to do so? I believe that's explicit, yes, Your Honor. Okay. And that, in effect, says that if you want a lawyer at a later stage, you have to explain why you think that's necessary. Well, I think earlier on the court explored the California law saying that it is that reappointment of counsel after forerunner rights have been exercised is a matter committed to the discretion of the trial judge, and there are a number of factors that have to be examined for that. But that certainly was the obvious factor in this case. What was the obvious factor? That he never explained, he never suggested any reason why he wanted to. He wanted a lawyer to file a motion for a new trial. What more does he need to say? Well, as the California court said in examining Menifee, they said, you need to sort of suggest that you can't do it, that you don't feel capable of doing it. And on the contrary, Mr. Rothfeld. If I've just represented myself at trial and I've just lost and I now say, you know, I'd like a lawyer, a motion for a new trial, I'll rely on your rationale as to how to interpret the California court of appeal opinion, I think it is implicit or can reasonably be inferred as the reason is, I don't think I can do as good a job on my own as I might be able to do if I had a lawyer. I don't think he needs to say that. I don't dispute that with you, Your Honor. I would say quite simply, though, that the question is whether in the circumstances that were presented to the trial court, the trial court abused its discretion in saying you haven't convinced me that you should have one. And at least as California law has approached revocation of Faretta rights, you haven't met the burden. Well, that's really the question. Is that an unreasonable application of the Constitution as stated by the Supreme Court in whatever rule it has proclaimed? And, you know, I guess the circuit courts are trying to figure out what rule the Supreme Court has announced, and it doesn't have to be in a single case and a single sentence. Yes, Your Honor. As you say, the less it's clear, the broader the State's discretion to adapt a rule and have it held reasonable. Yes, Your Honor. And here what we'd have to say is that no fair-minded jurist could have shaped the rule that California has shaped. Well, you know, that rule is very strange to apply. When you get the case before you, it's because California jurists have shaped that rule, including the Supreme Court. And that can't really mean that we have to say that every California jurist who's responsible for this case is not fair-minded, can they? Your Honor, well, what the Supreme Court said in Richter ---- Yes, I know what they said. Do you think they really mean that the entire California Supreme Court doesn't contain one fair-minded jurist? No. No, Your Honor. And I think the Supreme Court has sort of struggled with, you know, how you describe that objective standard. But what I think Richter says is that the error, errors that warrant remedy under the AEDPA are obvious and indisputable, obvious in that the rule is clear. We don't have to extend anything. We don't have to interpret. We don't have to create a new matrix for examination of the question. And indisputable, such that if you point out the mistake that the state court made, no reasonable jurist would disagree with that. Which means, it doesn't it, that all the judges that the appellant thinks or petitioner thinks made a mistake, they were all, he would have to show that none of them was a fair-minded jurist? I think what you'd have to show is that no fair-minded argument can be made in support of the state court's decision. All right. So how would you ever reverse the state court decision? You'd have to say all the justices on the Supreme Court of California are not fair-minded. I don't think so. I think occasionally. No fair-minded jurist could have reached that decision? As you've indicated, as this Court has shown, state courts make mistakes. And when the mistake is clarified through the appellate process or through the habeas process, sometimes those mistakes are clear. All right. But I'm talking about what you said and your quote from Justice Kennedy about no fair-minded jurist could have come to that conclusion. Yes, I think the error has to be obvious and indisputable. One that no fair-minded jurist could have made? Yes. Yes. And therefore, why are we hearing cases from California? Because clearly a fair-minded jurist, there's one fair-minded jurist at least on the California Supreme Court. I don't know how many there are. But how would we ever reverse them under that standard? If you ‑‑ if it is demonstrated that the error is ‑‑ I really don't mean to blame you for Justice Kennedy's opinion. You chose to quote it, which is, I think, you're right. I think the Supreme Court's direction, as shown by a series of court cases in the last year ‑‑ Yes. I'm familiar, very familiar with that series of cases. And I'm very familiar with what they said, that no fair-minded jurist could have done that. And I don't understand it, but I don't expect you to either. Yeah. So ‑‑ I can only try. And it is quite possible that I see it from a side different from the way other people might see it. Occasionally the Supreme Court justices may indulge in hyperbole. Obviously fair-minded is not the word in the statute. Yes. Unreasonable is the word in the statute. And that's a difficult word to understand completely. But the ‑‑ and I think, well, it is quite simple. If the question is open, then AEDPA and our federal structure say that the state court should be given latitude to make their own rules. Yes. We got that. Thank you, Your Honor. Thank you for your patience with that. Excuse me. I'll accept your kind offer of two minutes, Judge. I think ‑‑ You don't have to use it all. I know. Yes. What happened here was that whatever else happened, the judge refused a lawyer for a bad reason. He said you can't have a lawyer. And whatever else is true, it can't be that you can say you're not allowed to have a lawyer. Is the state limited to the reason given by the trial judge or if the court of appeals gives a broader reason? They have to look at the record. I mean, the test in California is, quoting from the court of appeal, in the final analysis it is the totality and facts and circumstances which the trial court must consider in exercising its discretion as to whether or not to permit a defendant to again change his mind. And what I'm saying, though, is if the state appellate court says, well, the district judge was right, or the trial judge was right, even though he didn't consider everything he should have, he had good reason. Well, excuse me, Judge. I think there's a lot of California cases that say that you've got to state the reasons on the record. And if the district court of appeal gives you a broader reason, then we ignore that and look only to the reasons. Well, I think you have to look at the reasons that the judge gave. And your opponent says the reasons were delayed. Look at how he conducted himself and look how he continued to conduct himself. Well, the delay thing, that would be a legitimate reason, wouldn't it, now? It was huge. But the judge wouldn't even give him a transcript. I mean, how is he going to write a new trial motion without a transcript? It's going to take a little bit of time to prepare the transcript. And as Judge Reinhardt points out, I mean, what's the point of delay? You know, if you're trial switching, you could say, well, the witness might show up, they might die. All sorts of things. After you've been found guilty, it's on you, the delay. So there's just no motivation. I think there's anything where I'll get myself in trouble. Thank you very much. Thank you. We're all convened. We are here. Okay. Very good. We'll be submitted.
judges: Zouhary, Reinhardt, Fletcher